IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-22506-CIV-MOORE/SIMONTON

AUDLEY CHARLTON,

    Plaintiff,

vs.

REPUBLIC SERVICES OF
FLORIDA, LIMITED PARTNERSHIP
d/b/a ALL SERVICE
MIAMI-DADE, a foreign corporation, and
REPUBLIC SERVICES, INC., a foreign
corporation,

    Defendants.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Defendants' Motion for Summary Judgment (dkt # 13).

UPON CONSIDERATION of the Motion, the Responses, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

I.    BACKGROUND

This case involves an individual who claims he was terminated from his employment in violation of various state laws. Plaintiff Audley Charlton ("Charlton") was employed as a helper, and later as a driver, by Defendant Republic Services of Florida, Limited Partnership d/b/a All Service Miami-Dade ("All Service") from September of 2000 to May of 2008.[1] Def.s' Statement

---

[1] Plaintiff did not work for All Service from July of 2004 to October of 2005. Def.'s Facts ¶ 5.

of Undisputed Material Facts ("Def.s' Facts") ¶¶ 1, 3 (dkt # 14).[2] All Service is a solid waste retrieval company. Id. ¶ 1. Charlton is an African-American male who was employed by All Service as the driver of a front-end loader, a garbage truck with two forks on the front used to pick up garbage dumpsters. Pl.'s Resp. to Def.s' Statement of Undisputed Material Facts ("Pl.'s Facts") ¶ 1 (dkt # 22). In 2004, Charlton injured his knee on the job and subsequently received workers' compensation benefits. Def.s' Facts ¶ 2. From April 3, 2007, to May 2, 2007, Charlton reported mechanical problems with his assigned truck 14 times in separate written vehicle condition reports. Pl.'s Facts ¶ 4. Some of these reports concerned problems with the brakes and steering that impeded his ability to operate the vehicle. Id. ¶ 4-7.

On May 3, 2007, Charlton returned to the truck yard with a partial load of garbage because he was low on diesel fuel. Id. ¶ 16. At this time, Charlton's supervisor was Frank Pascual ("Pascual"). Carlos Arbelaez ("Arbelaez") was the Operations Manager and Allyson Blease ("Blease") was the General Manager. Charlton did not dump his truck prior to returning to the yard because he had received permission to leave a partial load of garbage in his truck on certain days. Aff. of Charlton at ¶ 2 (dkt # 23-4); see Dep. of Pascual at 67-68 (dkt # 23-1). All Service's company policy requires drivers to empty their trucks before returning to the yard at the end of their shifts. Decl. of Blease ¶ 6 (dkt # 16-2 at 5-7). All Service alleges that when questioned about bringing a load of garbage back to the yard, Charlton refused to dump the garbage and said that he was looking for another job and would leave All Service as soon as he found one. Dep. of Arbelaez at 8-9 (dkt # 23-2); Dep of Blease at 29-30 (dkt # 23-3); Decl. of Blease at ¶¶ 6-7 (dkt # 16-2, Ex. E).

---

[2] Citation to the Parties' Statements of Fact incorporate by reference the underlying citations.

After his shift on May 3, 2007, Charlton advised Arbelaez that his knee hurt and that he would miss work the next day to visit the doctor. Def.s' Facts ¶ 13; Pl.'s Facts ¶ 14. On May 4, 2007, Pascual told Charlton not to come in until May 7, 2007. When Charlton returned, he met with Blease on May 7, 2007, and Blease asked Charlton if he wanted to resign. When Charlton asked why, Blease allegedly responded "because you're black, no I am just kidding, kidding, kidding." Def.s' Facts ¶ 14; Pl.'s Facts ¶ 18. Blease proceeded to terminate Charlton from employment with All Service. Def.'s Facts ¶ 15. Blease terminated Charlton because she believed that he posed a safety concern to himself and the general public based on his statement that he was looking for another job. Decl. of Blease ¶ 7-8.

Charlton file a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") on July 1, 2007. Charge of Discrimination (dkt # 15, Ex. G at 2). Charlton filed an Amended Charge of Discrimination with the EEOC and the FCHR on February 18, 2008. Am. Charge of Discrimination (dkt # 15, Ex. G at 3). On May 6, 2009, Charlton filed a Complaint against Defendants in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, alleging a violation of the Florida Whistleblower Act (Count I), unlawful termination under the Florida Civil Rights Act (Count II) and worker's compensation retaliation (Count III). Compl. (dkt # 1 at 12-19). Defendants filed a Notice of Removal on August 26, 2009, based on diversity jurisdiction. Notice of Removal (dkt # 1).

## II.     STANDARD OF REVIEW

The applicable standard for reviewing a summary judgment motion is unambiguously stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). Summary judgment may be entered only where there is no genuine issue of material fact. Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. Id. However, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### III. ANALYSIS

#### A. Charlton's Employer

Defendants argue that Charlton's cannot prevail on any of his claims against Defendant Republic Services, Inc. ("RSI") because it never employed Charlton and cannot be held liable for any of Charlton's claims. All Service concedes that it employed Charlton. Tracy Aubin

("Aubin"), RSI's Area Human Resources Manager, submits that Charlton was not employed by RSI. Aff. of Aubin, sworn to April 21, 2010 ¶ 5 (dkt # 16-2, Ex. F). Although RSI was the parent company of All Service, it did not own the facility or equipment used by All Service, did not provide compensation to Charlton, did not determine the terms and conditions of Charlton's employment, did not employ any other All Service employee, and had no control over All Service's day-to-day operations. Id. at ¶¶ 4-9. Charlton does not contest RSI's assertion that it never employed him and that it cannot be held liable for his claims. See Pl.'s Response to Def.s' Mot. for Summ. J. (dkt # 21); Pl.'s Facts (dkt # 22). In light of the evidence put forth by RSI that it did not employ Charlton, and Charlton's failure to put forth any competing evidence, RSI is entitled to summary judgment on each of Charlton's claims.

B.  Florida Whistleblower Act

In Count I, Charlton alleges that All Service violated the Florida Whistleblower Act ("FWA"), which provides, in relevant part:

> An employer may not take any retaliatory personnel action against an employee because the employee has: . . .(3) Objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

§ 440.102, Fla. Stat. "The [FWA] is designed to protect private employees who report or refuse to assist employers who violate laws enacted to protect the public." Shurick v. Boeing Co., No. 6:07-cv-1974-Orl-31GJK, 2010 WL 258788, at *2 (M.D. Fla. Jan. 20, 2010) (citing Arrow Air, Inc. v. Walsh, 645 So. 2d 422, 424 (Fla. 1994)). "The act is remedial in nature and should be construed liberally in favor of granting access to the remedy so as not to frustrate the legislative intent." Id. (citing Irven v. Dep't of Health & Rehabilitative Servs., 790 So. 2d 403, 406 (Fla. 2001)).

5

To establish a violation of § 440.102(3), Charlton must satisfy the same requirements of a Title VII Civil Rights Act claim. Id. (citing Rice-Lamar v. City of Fort Lauderdale, 853 So. 2d 1125, 1132-33 (Fla. 4th DCA 2003)).[3] To establish a prima facie case under Title VII, a plaintiff is required to show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; (3) and a causal link exists between engaging in the protected activity and the adverse employment action. Rice-Lamar, 853 So. 2d at 1132-33. After establishing a prima facie case, the employer must produce a non-retaliatory reason for the employment action, which the plaintiff then bears the burden of proving was actually pretextual and a false cover for the impermissible retaliatory employment action. Id. at 1133.

In deciding whether an employee has engaged in statutorily protected expression, "the plain language of the statute, as well as legal precedent, demonstrate that the activity protected by the [FWA] must be an *actual* violation of the law, rule or regulation; a *suspected* violation, even a good faith belief that there is a violation, is not sufficient to trigger the Act's protection." Odum v. Gov't Employees Ins. Co., No. 8:08-cv-1282-T-24-EAJ, 2009 WL 2134918, at *3 (M.D. Fla. July 13, 2009) (citing White v. Purdue Pharma, Inc., 369 F. Supp. 2d 1335, 1337-39 (M.D. Fla. 2005)) (emphasis in original); see Moren v. Progress Energy, Inc., No. 8:07-cv-1676-T-17, 2008 WL 3243860, at *9 (M.D. Fla. Aug. 7, 2008) (stating that "unlike Title VII's unlawful retaliation provisions, the FWA requires the plaintiff to actually prove a violation of the law, rule, or regulation in order to succeed"); Branche v. Airtran Airways, Inc., No. 8:01CV1747-T-30MSS, 2005 WL 1051097, at *2 (M.D. Fla. May 2, 2005) (same, declining to apply Title

---

[3] The Eleventh Circuit Court of Appeals has stated that for claims brought pursuant to the Florida Whistleblower Act, a Court should apply the analysis used in Title VII retaliation cases. Sierminski v. Transouth Financial Corp., 216 F.3d 945, 950 (11th Cir. 2000).

VII's good faith belief standard relied upon in <u>Padron v. Bell South Telecommunications, Inc.</u>, 196 F. Supp. 2d 1250 (S.D. Fla. 2002)).

Charlton claims that he engaged in statutorily protected expression by reporting mechanical problems with his vehicle. Charlton states that his vehicle condition reports are mandated by federal law and federal regulations, specifically 49 C.F.R. § 396.11 and 49 U.S.C. § 31105. 49 C.F.R. § 396.11, provides, in relevant part:

> (a) (1) Motor Carriers. Every motor carrier shall require its drivers to report, and every driver shall prepare a report in writing at the completion of each day's work on each vehicle operated . . . .
> (b) Report content. The report shall identify the vehicle and list any defect or deficiency discovered by or reported to the driver which would affect the safety of operation of the vehicle or result in its mechanical breakdown . . . .
> (c) Corrective action. Prior to requiring or permitting a driver to operate a vehicle, every motor carrier or its agent shall repair any defect or deficiency listed on the driver vehicle inspection report which would be likely to affect the safety of operation of the vehicle . . . .

49 C.F.R. § 396.11. A motor carrier means "a for-hire motor carrier or a private motor carrier." 49 C.F.R. § 390.5. Private motor carrier means "a person who provides transportation of property or passengers, by commercial motor vehicle, and is not a for-hire motor carrier." <u>Id.</u> Commercial motor vehicle means, in relevant part, "any self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle-- (1) Has a gross vehicle weight rating or gross combination rating, or gross vehicle weight or gross combination weight, or 4,536 kg (10,001 pounds) or more, whichever is greater . . . ." <u>Id.</u>

These regulations raise the questions of whether garbage is property within the meaning of "private motor carrier," and whether Charlton was operating a "commercial motor vehicle." The issue of whether garbage is property has been addressed by courts and by the Interstate

Commerce Commission in the context of the Motor Carrier Act and the Motor Carrier Safety Act. While these cases did not address the meaning of property within the meaning of "private motor carrier" under 49 C.F.R. § 390.5, the reasoning is nevertheless analogous.[4] In <u>Joray Trucking Corp. Common Carrier Application</u>, the ICC concluded that rock and debris transported from excavation and demolition sites were not property because they have a negative value, as opposed to sand and gravel, which are commodities with a positive value and thus lack the attributes normally associated with property. <u>Interstate Commerce Comm'n v. Browning-Ferris Indus., Inc.</u>, 529 F. Supp. 287, 289 (N.D. Ala. 1981) (citing <u>Joray Trucking Corp. Common Carrier Application</u>, 99 M.C.C. 109 (1965)). Thus, trash and garbage, which have no value, are not property within the meaning of the Motor Carrier Act. <u>Browning-Ferris</u>, 529 F. Supp. at 291 (citing <u>Ex Parte No. MC-85, Transp. of "Waste" Products for Reuse & Recycling</u>

---

[4] The Interstate Commerce Commission was essentially the predecessor of the Surface Transportation Board.

> Congress enacted the Motor Carrier Act [("MCA")] in 1935. <u>See</u> William E. Kenworthy, Transportation Safety and Insurance Law § 4.01 (3rd ed. 2005). The Act endowed the Interstate Commerce Commission [("ICC")] "with the power to impose economic regulations such as licensing, certificate, and permit requirements on common and contract carriers, but not on private carriers." <u>Bilyou v. Dutchess Beer Distributors, Inc.</u>, 300 F.3d 217, 227 (2nd Cir. 2002). "However, while private carriers were exempt from the economic and licensing regulations established by the MCA, the ICC retained the authority under the Act to prescribe safety of operation requirements relating to the maximum hours and qualifications of their employees." <u>Id.</u> "In 1996, Congress enacted the 'Department of Transportation Act,' which transferred the 'authority to regulate safety operations for motor vehicles under the MCA from the ICC to the Department of Transportation.'" <u>Id.</u> at 222 n.2. "[T]he ICC retained responsibility for determining the fitness of common and contract carriers." Kenworthy, supra § 4.02. "Congress abolished the ICC on January 1, 1996 and transferred many of its functions to the newly created Surface Transportation Board, an agency within the Department of Transportation." <u>Id.</u>

<u>Wilson v. IESI N.Y. Corp.</u>, 444 F. Supp.2d 298, 303 (M.D. Pa. 2006).

(Gen. Motor Carrier Licensing), 114 M.C.C. 92 (1971)); see Wilson, 444 F. Supp.2d at 307 (stating that under the Motor Carrier Safety Act, material transported for the purpose of disposal or to be used as landfill is not property within the meaning of "motor private carrier," 49 U.S.C. § 13102(15)); see also Alice v. GCS, Inc., No. 05 C 50132, 2006 WL 2644958, at *3 (N.D. Ill. Sept. 14, 2006) (holding that under the Motor Carrier Safety Act, non-hazardous, non-recyclable waste is not property within the meaning of "motor private carrier," 49 U.S.C. § 13102(15)). The ICC's basis for concluding that garbage is not property within the meaning of "motor private carrier," which has since been adopted by a number of federal courts, applies with equal force to the scope of property within the meaning of "private motor carrier" under 49 C.F.R. § 390.5. Thus, given that Charlton transports garbage, 49 C.F.R. § 396.11 does not apply to him and his vehicle condition reports do not constitute protected expression.[5]

Charlton also claims that he engaged in statutorily protected expression pursuant to 49 U.S.C. § 31105, which provides, in relevant part:

> (a) Prohibitions.-- (1) A person may not discharge an employee, or discipline or discriminate against an employee regarding pay, terms, or privileges of employment, because-- . . .
> (B) the employee refuses to operate a vehicle because--
> (i) the operation violates a regulation, standard, or order of the United States related to commercial vehicle safety, health, or security; or
> (ii) the employee has a reasonable apprehension of serious injury to the employee or the public because of the vehicle's hazardous safety or security condition.

49 U.S.C. § 31105(a). This provision protects employees from adverse employment action

---

[5] The Parties have not submitted evidence that the front loader Charlton was operating weighs more than 10,001 pounds. While it is unlikely that a front loader garbage truck described as the truck Charlton operated would be under 10,000 pounds, it is unnecessary to resolve this issue given that garbage is not property within the meaning of "private motor carrier." It is also unclear whether Charlton's activities as a driver falls within the scope of interstate commerce.

arising from an employee's unwillingness to operate a vehicle because of a safety violation or an unsafe condition. Charlton's allegations may fall within the scope of § 31105, as it provides protection to employees that is similar to the protections provided by the FWA. However, Chartlon is not seeking relief under § 31105. Rather, his purpose for referencing this statute is to demonstrate that he engaged in statutorily protected expression. To do so, he must have objected to, or refused to participate in, some activity that was in actual violation of a law or regulation. Section 31105 does not provide a basis for any statutorily protected expression by Charlton because he did not object to, or refuse to engage in, any activity based on a violation of § 31105. He does not, and cannot, allege that All Service was in violation of § 31105 at the time he filed his vehicle condition reports because he was still employed at the time. Nor did his reports pertain to any violation of § 31105. Therefore, Charlton did not engage in any statutorily protected conduct. Accordingly, All Service is entitled to summary judgment on the FWA claim because Charlton has failed to establish a prima facie case.

  C. <u>Unlawful Termination - Florida Civil Rights Act</u>

Charlton claims that he was unlawfully terminated because of his race, in violation of the Florida Civil Rights Act ("FCRA"). The FCRA provides, in relevant part:

> (1) It is an unlawful employment practice for an employer:
> (a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status.

§ 760.10, Fla. Stat. "The plaintiff may establish a prima facie case of discrimination under Title VII . . . on the basis of direct evidence of discrimination, which consists of 'evidence which, if believed, would prove the existence of discrimination without inference or presumption.'"

Holifield v. Reno, 115 F.3d 1555, 1561 (11th Cir. 1997) (quoting Carter v. City of Miami, 870 F.2d 578, 581-82 (11th Cir. 1989)). "In the usual case, however, direct evidence is not present, and the plaintiff must rely on circumstantial evidence to prove discriminatory intent, using the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)." Id. The burden shifting analysis applicable to claims brought under Title VII of the Civil Rights Act of 1964, and the precedent from Title VII cases, are applicable to claims brought under the FCRA. Gamboa v. Am. Airlines, 170 Fed. Appx. 610, 612 (11th Cir. 2006).

Under the three-step burden shifting framework established in McDonnell Douglas, a Title VII complainant carries the initial "burden of establishing a prima facie case of racial discrimination." 411 U.S. at 802. To establish a prima facie case, a plaintiff must show that he: (1) belongs to a protected class; (2) was qualified to do the job; (3) was subjected to adverse employment action; and (4) was replaced by a person outside the protected class or suffered from disparate treatment because of membership in the protected class. Bolton v. Potter, 198 Fed. Appx. 914, 916 (11th Cir. 2006). "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." Holifield, 115 F.3d at 1562 (citations omitted).

Once the plaintiff has established a prima facie case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." McDonnell Douglas, 411 U.S. at 802. "This may be done by the employer articulating a legitimate, non-discriminatory reason for the employment decision, which is clear, reasonably specific, and worthy of credence. The employer has a burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason

11

advanced." Hall v. Ala. Ass'n of Sch. Bds., 326 F.3d 1157, 1166 (11th Cir. 2003) (citing McDonnell Douglas, 411 U.S. at 802; Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-55, 258 (1981)).

If the defendant meets his burden, "then the plaintiff may attempt to show that the proffered reason was merely a pretext for the defendant's acts." Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1310 (11th Cir. 1998) (quoting Burdine, 450 U.S. at 253). "The employee may satisfy this burden either directly, by persuading the court that a discriminatory reason more than likely motivated the employer, or indirectly, by persuading the court that the proffered reason for the employment decision is not worthy of belief. By so persuading the court, the employee satisfies his ultimate burden of demonstrating by a preponderance of the evidence that he has been the victim of unlawful discrimination." Hall, 326 F.3d at 1166 (citing Burdine, 450 U.S. at 256). Despite this burden shifting test, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Jones, 137 F.3d at 1310 (citing Burdine, 450 U.S. at 253).

In order to establish a prima facie case, "the plaintiff must show that his employer treated similarly situated employees outside his classification more favorably than [himself]." Holifield, 115 F.3d at 1562 (citations omitted). Further, "[t]o make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects." Id. (citations omitted). Therefore, "it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Id. (citations omitted). When a plaintiff has failed "to show the existence of a similarly situated employee, summary judgment is appropriate when no other

evidence of discrimination is present." Id.

In Jones, the Eleventh Circuit explained that "[t]he most important factors 'in the disciplinary context . . . are the nature of the offenses committed and the nature of the punishments imposed.'" 137 F.3d at 1311 (citing Jones v. Gerwins, 874 F.2d 1534, 1539-40 (11th Cir. 1989)). Further, the Eleventh Circuit "require[s] that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples and oranges." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). "If Plaintiff fails to identify similarly situated, nonminority employees who were treated more favorably, [his] case must fail because the burden is on [him] to establish [his] prima facie case." Jones, 137 F.3d at 1311.

Here, Charlton asserts, and All Service does not dispute, that Charlton is a member of a protected class, that he was qualified to do his job, and that his termination constitutes adverse employment action.[6] Charlton further asserts that he was replaced by Ruden Delgado, a person outside his protected class whom he describes as a "White Cuban" or "White Hispanic."[7] Pl.'s Facts ¶ 19. All Service does not dispute that Charlton was replaced by Delgado or that Delgado is outside of Charlton's protected class. See Terrell v. City of Harrisburg Police Dept., 549 F. Supp. 2d 671, 682 (M.D. Pa. 2008) (stating that Hispanic employee was outside of African-American plaintiff's protected class). These facts are sufficient for Charlton to establish a prima

---

[6] Application of the burden shifting analysis appropriate here because there is no direct evidence of discrimination. Blease's alleged joking statement that Charlton should resign because of his race is not direct evidence of discrimination because, standing alone, it is insufficient prove the existence of discrimination without inference or presumption.

[7] In his deposition, Pascual, Charlton's supervisor, stated that Charlton was replaced by Delgado, a "White Cuban." Dep. of Pascual at 47 (dkt # 23-1, Ex. B).

facie case because they meet all four prongs of the first step of the burden shifting analysis.

Moreover, Charlton alleges that he suffered disparate treatment because of his membership in a protected class given that he was the only driver terminated for bringing back a load of garbage.[8] Charlton had previously been permitted to bring back loads of garbage in the past when he ended the day without a full load or when his vehicle ran out of fuel. Pascual Dep. at 66-69 (dkt # 23-1). On at least Tuesdays and Thursdays, Charlton ordinarily left a partial load of garbage in the vehicle, which he would dispose of in the morning after filling up the truck. Id. at 67-68. Other drivers under Pascual's supervision brought back loads of garbage when their vehicles ran out of gas, when there were mechanical problems, or when they had doctors appointments. Id. at 66. These drivers were not terminated, although some received verbal warnings. Arbelaez Dep. at 14 (dkt # 23-2). These drivers did not receive written warnings because verbal discipline was the first step in the disciplinary process. Id.

Pascual had fifteen drivers and two roll-off drivers under his supervision. Pascual Dep. at 18. It is unclear how many of these individuals were outside of Charlton's protected class during his employment, although only three or four were African-American when Charlton was terminated. Pascual Dep. at 42. It is not entirely clear whether the other drivers who brought back loads of garbage were outside of Charlton's protected class. However, given the number of African-American drivers working for Pascual at the time Charlton was terminated and Pascual's deposition testimony that it was a common practice for drivers to bring back loads of garbage for various reasons, it is reasonable to infer that some of the drivers who brought back partial loads

---

[8] Viewing the facts in the light most favorable to Charlton, as we must at this stage, this Court credits Charlton's account of his termination, which does not include insubordination or statements that he was looking for another job and would leave as soon as he found one.

were outside of Charlton's protected class. Moreover, the absence of similar adverse employment action to other similarly situated drivers engaged in identical conduct, combined with Charlton's allegation concerning Blease's joking statement that Charlton was being terminated because he is African-American, is sufficient to establish a prima facie case.

Given that Charlton has established a prima facie case, the burden shifts to All Service to put forth a legitimate, nondiscriminatory reason for Charlton's termination. All Service alleges that when questioned about bringing a load of garbage back, Charlton refused to dump the garbage and said that he was looking for another job and would leave All Service as soon as he found one. Dep. of Arbelaez at 8-9 (dkt # 23-2); Dep. of Blease at 29-30 (dkt # 23-3); Decl. of Blease at ¶¶ 6-7 (dkt # 16-2, Ex. E); Investigative Report of Maria Tomich ("Tomich") at 3 (dkt # 23-7). Based on this statement, Blease concluded that Charlton was a safety risk to the general public and to himself and decided to terminate him. Decl. of Blease ¶ 7-8.

Charlton, however, states that he had permission to bring back a load of garbage on Tuesdays, Thursdays and Fridays because his diesel tank was not large enough to take the truck to the dump. Aff. of Charlton at ¶ 2 (dkt # 23-4); see Dep. of Pascual at 67-68. He also denies refusing to take the garbage to the dump or saying that he was looking for another job. Id. at 1-2. At the summary judgment stage, this Court must view the evidence and all factual inferences in the light most favorable to Charlton.[9] Given that All Service's reason for Charlton's termination

---

[9] "Conclusory, self serving, or uncorroborated allegations in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment" motion. Smith v. HCA Inc., No. 303CV754J99TEM, 2005 WL 1866395, at *3 (M.D. Fla. July 26, 2005). This Court does not view Charlton's affidavit as self serving with respect to his version of the events surrounding his termination. The three people present when Charlton allegedly refused to dump the garbage and expressed an intention to find another job were Charlton, Arbelaez and Blease. Charlton tells one version of events while Arbelaez and Blease tell another. The fact that Charlton is outnumbered two to

is entirely dependent on facts that are in dispute, there is a genuine issue of material fact as to whether All Service's reason for terminating Charlton was legitimate and nondiscriminatory. Even if this Court were to find that All Service has established that there is no genuine issue of material fact that it has produced a legitimate, non-discriminatory reason, there is nevertheless a genuine issue of material fact as to whether All Service's proffered reason was merely pretextual. Therefore, summary judgment in favor of All Service is not warranted on Charlton's FCRA claim.

D.  Workers' Compensation Retaliation

Charlton claims that he was terminated in retaliation for pursuing a workers' compensation claim. Section 440.205, Florida Statutes, provides: "No employer shall discharge, threaten to discharge, intimidate, or coerce any employee by reason of such employee's valid claim for compensation or attempt to claim compensation under the Workers' Compensation Law." § 440.205, Fla. Stat. "Retaliation claims brought under § 440.205 are subject to the burden shifting analysis applicable to Title VII claims." Williams v. Record Town, Inc., No. 8:08-CV-502-T-24-MAP, 2009 WL 960096, at *3 (M.D. Fla. Apr. 6, 2009) (citing Humphrey v. Sears, Roebuck, and Co., 192 F. Supp. 2d 1371, 1374 (S.D. Fla. 2002)). In order to establish a prima facie case of retaliatory discharge, Charlton must show that "(1) he sought workers' compensation benefits; (2) he suffered adverse employment action; and (3) there is a causal connection between his claim for workers' compensation benefits and the adverse employment action." Id. (citing Russell v. KSL Hotel Corp., 887 So. 2d 372, 379 (Fla. 3d DCA 2004)).

---

one is insufficient to establish that there is no genuine issue of material fact with respect to which version of the story is true. While Tomich's investigative report supports Arbeleaz and Blease's version, a reasonable jury could nevertheless find Charlton's version more credible.

"Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse employment action." Id. "After the employer makes this proffer, the burden shifts back to the plaintiff to prove, by a preponderance of the evidence, that the legitimate reason was merely a pretext for the prohibited retaliatory conduct." Id.

The Parties do not dispute that Charlton received workers' compensation benefits in 2004 and that his termination constitutes adverse employment action. All Service contends that there is no causal connection between the workers' compensation benefits and the adverse employment action because he was terminated before the individual who made the decision to terminate him became aware of his workers' compensation claim. Blease made the decision to terminate Charlton on May 3, 2007, after consulting with Area President Bob Hely ("Hely").[10] Dep. of Blease at 32-33 (dkt # 23-3); Decl. of Blease ¶ 8 (dkt # 16-2 at 5-7). Blease did not become aware that Charlton had previously filed a workers' compensation claim until after the decision to terminate him had been made. Dep. of Blease at 24-25, 32; Decl. of Blease ¶ 9. Charlton has put forth no evidence that Blease knew of his workers' compensation claim before she decided to terminate him. Therefore, there is no genuine issue of material fact concerning the absence of a nexus between Charlton's workers' compensation claim and his termination. Accordingly, summary judgment in favor of All Service on Charlton's workers' compensation retaliation claim is warranted.

---

[10] No evidence has been presented as to when, or if, Hely learned of Charlton workers' compensation claim.

IV. **CONCLUSION**

Based on the foregoing, it is

ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment (dkt # 13) is GRANTED IN PART AND DENIED IN PART. Summary judgment is granted in favor of RSI on all counts. Summary judgment is granted in favor of All Service on Charlton's FWA and workers compensation retaliation claims. Summary judgment is denied on Charlton's FCRA claim.

DONE AND ORDERED in Chambers at Miami, Florida, this 1st day of June, 2010.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:   All counsel of record